# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EKATERINA MAKAROVA, <br><br> Petitioner, <br><br> v. <br><br> Daniel A. BRIGHTMAN, in his official capacity as Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal OperationsSan Diego Field Office; Kristi NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; Pamela J. BONDI, in her official capacity as U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; Christopher J. LAROSE, in his official capacity as Warden of the Otay Mesa Detention Center, <br><br> Respondents. | Case No.: 26cv0373 DMS JLB <br><br> **ORDER GRANTING PETITION** |

This case comes before the Court on the Petition for Writ of Habeas Corpus. Respondents filed a return to the Petition, and Petitioner filed a traverse.

      Petitioner is a Russian national who first entered the United States without inspection on or about September 3, 2023. (Pet. at 7.) On October 12, 2023, Petitioner filed a Form I-589 asylum application. (*Id.* at 8.) On January 25, 2024, she filed a Form I-131, advance parole application, to travel to Europe because her son was ill. (*Id.*) United States Citizenship and Immigration Services ("USCIC") approved that application on July 1, 2024. (*Id.*) With that approval, Petitioner lawfully traveled to Europe. (*Id.*) Upon her return on October 31, 2024, Petitioner was paroled back into the United States. (*Id.*) Her parole was valid until October 29, 2025. (*Id.*)

      While Petitioner was on valid parole status, her U.S. citizen husband filed a Form I-130, Petition for Alien Relative. (*Id.*) Petitioner and her husband also jointly filed a Form I-485, Application to Register Permanent Residence or Adjust Status. (*Id.*) On December 9, 2025, Petitioner and her husband appeared for their marriage-based adjustment of status interview at the USCIS San Diego Field Office. (*Id.*) At the conclusion of the interview, the USCIS officer ushered in agents from Immigration and Customs Enforcement ("ICE"), who arrested Petitioner. (*Id.*) The following day officials from the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear before an immigration judge on December 22, 2025. (Return, Ex. 1.)

      On January 21, 2026, Petitioner filed the present case seeking release from custody. She raises three claims in the Petition. First, she argues her detention at her adjustment of status interview violated her rights to procedural and substantive due process. Second, she asserts her detention at her adjustment of status interview, and Respondents failure to consider her for parole, violate the Immigration and Nationality Act ("INA"). Third, Petitioner contends her detention at her adjustment of status interview violated the Administrative Procedure Act ("APA"). Respondents argue Petitioner is properly detained

/ / /
/ / /
/ / /
/ / /

under 8 U.S.C. § 1225(b)(2)(A), and the pendency of her I-485 application does not affect the legality of her detention.[1]

Several courts have addressed the fact pattern presented here, and they have uniformly sided with the petitioners on claims similar to those raised in this case. In *You v. Nielsen*, 321 F. Supp. 3d 451, 464-66 (S.D.N.Y. 2018), the court found the petitioner had demonstrated a likelihood of success on his claim that his detention at his adjustment of status interview violated the INA and applicable regulations. In coming to that conclusion, the court looked first to the requirements and restrictions governing adjustment of status, and stated the petitioner met the requirements and was not barred by any restrictions. *Id.* at 464. Given that, the court found Respondents' actions "frustrated" the statutory scheme. *Id.*

In analyzing the statute, the court described the INA as creating "'a regulatory interstice[,]'" *id.* (quoting *Ceta v. Mukasey*, 535 F.3d 639, 646 (7th Cir. 2008)), in which the noncitizen is afforded an opportunity to seek adjustment of status, "but, at the same time, [the noncitizen] risks removal before being able to complete the adjustment of status process." *Id.* at 465 (citing *Ceta*, 535 F.3d at 646). The court noted that without its intervention, "'the statutory opportunity to seek adjustment of status will prove to be a mere illusion.'" *id.* (quoting *Ceta*, 535 F.3d at 647), and the court "decline[d] to read the INA in a way that nullifies its adjustment of status scheme." *Id.* The court was also mindful that "the INA's 'prevailing purpose' is to 'implement[ ] the underlying intention of our immigration laws regarding the preservation of the family unit.'" *Id.* (quoting *Nwozuzu v. Holder*, 726 F.3d 323, 332 (2d Cir. 2013)). Given all of these considerations, the court stated,

> Congress did not intend its carefully considered adjustment of status process for a select group of aliens to become a mechanism for "gotcha" law

---

[1] Respondents also assert to the extent Petitioner is challenging the expiration of her parole or asking the Court to order her paroled again, the Court lacks jurisdiction to do so. Petitioner is not raising either of these issues. (*See* Traverse at 3.) Therefore, the Court does not address Respondents' argument further.

  enforcement.  Nor could it, without raising serious constitutional concerns.
These type of bait-and-switch tactics are not only a perversion of the statute,
but also likely offensive to "the concept of ordered liberty."

*Id.* at 466 (quoting *Rochin v. California*, 342 U.S. 165, 169 (1952)).[2]

  In *De Jesus Martinez v. Nielsen*, 341 F.Supp.3d 400 (D.N.J. 2018), the court found the petitioner demonstrated a likelihood of success on his APA claim arising from his detention during an I-130 interview.  Like the *You* court, the *De Jesus Martinez* court stated:

> This case involves exactly the arbitrary and capricious behavior our laws intend to prevent.  DHS created a process for individuals in Mr. Martinez's exact position to apply for a waiver, and required, as part of that process, his attendance at an interview to confirm the bona fides of his marriage.  Then, based on a purported "new policy," ICE agents used that interview to prevent Mr. Martinez from completing the waiver process.  If left unchecked, this "new policy" would render the provisional waiver a nullity.
>
> Respondent-Defendants' attempt to deport Mr. Martinez by arresting him during his I-130 interview constitutes a disregard for the rights that they, on behalf of DHS created.  To attempt to remove Mr. Martinez while he was availing himself of the provisional waiver process is "arbitrary, capricious, an abuse of discretion, [and] not in accordance with law."

*Id.* at 410.  *See also Wanrong Lin v. Nielsen*, 377 F.Supp.3d 556 (D. Md. 2019) (finding petitioner likely to succeed on merits of claim that arrest at I-130 interview violated APA).

  Other courts have also found that petitioners were likely to succeed on due process claims arising out of detentions at adjustment of status interviews.  *See Mody v. Warden*, No. ED CV 25-3400 FMO (RAO), 2026 WL 51976, at *5-7 (C.D. Cal. Jan. 5, 2026) (finding *Mathews v. Eldridge* factors weighed in favor of finding "a likelihood of success on the merits of [petitioner's] procedural due process claim"); *Diaz v. Albarran*, No. 3:25-

---

[2] At least one court has recently adopted the reasoning of *You* and found the petitioner demonstrated a likelihood of success on his claim that "arresting him at his adjustment of status interview violates the INA."  *See Franco v. Meyer*, No. 1:25-cv-01620-DAD-CKD, 2025 WL 3280782, at *2 (E.D. Cal. Nov. 25, 2025).

cv-09837-JSC, 2025 WL 3214972, at *3 (N.D. Cal. Nov. 18, 2025) (stating, "[a]t a minimum, Petitioner has demonstrated his Petition raises serious legal questions regarding the applicability of Section 1225(b)(2) to his situation and that his ongoing detention violates his procedural due process rights under the Fifth Amendment.")

Although the cases set out above would entitle Petitioner to relief on any of her claims, the Court is particularly convinced that Petitioner's detention at her I-485 interview violated her right to procedural due process. In analyzing that claim, the Court applies the following factors set out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Here, Petitioner's right to be free from government imprisonment is being affected by her continued detention. In *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), the Supreme Court stated "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Furthermore, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032 (N.D. Cal. 2025). Given the gravity of the interest at stake here, the first factor weighs in favor of Petitioner.

Turning to the second factor, there is a high risk of erroneous deprivation of the right to be free from government imprisonment when noncitizens are re-detained without notice or an opportunity to be heard, as Petitioner was in this case. Requiring Respondents to provide those procedural protections before re-detention would guard significantly against that risk. Thus, this factor also weighs in favor of Petitioner.

/ / /

Finally, on the third factor, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal aliens[,]'" and in increasing the chance that noncitizens with valid removal orders are successfully and lawfully removed. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (quoting *Demore v. Kim*, 538 U.S. 510, 515, 528 (2003)). However, when the Government has previously decided to release a noncitizen and there is no evidence in the record of any changed circumstance that might have caused the Government to reconsider its initial decision to release the noncitizen, which is the case here, courts have found the Government's interest in re-detention is low. *Doe v. Chestnut*, No. 1:25-cv-01372-CDB (HC), 2025 WL 3295154, at *10 (E.D. Cal. Nov. 26, 2025) (citations omitted). Thus, this factor, too, weighs in favor of Petitioner.

Respondents do not address *Mathews*, but instead argue Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2)(A). The Court has considered this argument in previous cases and rejected it. *See, e.g.*, *Fanfan v. Noem*, No. 25CV3291 DMS (BJW), 2025 WL 3563739, at *4 (S.D. Cal. Dec. 12, 2025). The Court does so again here. The Court also notes, as stated in *Fanfan*, that regardless of which statute governs Petitioner's detention, Respondents' statutory argument does not address Petitioner's procedural due process claim. In other words, Respondents' asserted compliance with the statutes does not demonstrate they have satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" *Tot v. United States*, 319 U.S. 463, 472 (1943) (Black, J., concurring).

Considering the *Mathews* factors and the parties' arguments, the Court finds Petitioner was re-detained in violation of her procedural due process rights.[3] Respondents shall release Petitioner immediately, and shall not re-detain Petitioner without first providing a pre-deprivation hearing before a neutral decisionmaker at which Respondents

---

[3] In light of this finding, the Court does not further address Petitioner's other claims under the INA or the APA.

must prove that changed circumstances related to flight risk or danger warrant her re-detention. The parties shall file a status report on or before **February 25, 2026**, indicating whether Petitioner has been released.

**IT IS SO ORDERED**.

Dated:  February 18, 2026

_____
Hon. Dana M. Sabraw
United States District Judge